# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

STEVEN REESE BARRETT,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

_______________________________________/

Case No. 1:25-cv-00469-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Steven Reese Barrett ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

On January 10, 2019, Plaintiff filed a claim for DIB payments, alleging he became disabled

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 7.) On July 10, 2026, this case was reassigned to the undersigned. (*See* Doc. 23.)

on May 2, 2018, due to major depressive disorder, recurrent episode; generalized anxiety disorder; right shoulder injury; and type 2 diabetes. (Administrative Record ("AR") 15, 203, 211, 252, 268, 970, 1112–18.)

Plaintiff was born in 1962 and was 55 years old on the alleged onset date. (AR 39, 211, 252, 268, 888, 969.) He has at least a high school education and has past work as a janitor and mechanic. (AR 90, 108, 204, 888, 1169.)

**A. Relevant Evidence of Record[3]**

**1. Medical Evidence**

In August 2017, Plaintiff suffered an injury to his right shoulder and elbow while lifting a 200-to-300-pound lawn mower at work. (AR 425–28.) He was given an injection in his right shoulder in February 2017. (AR 446.)

In May 2018, Plaintiff underwent right shoulder arthroscopic surgery. (AR 555–59.) He was "feeling well" post-surgery and physical therapy was ordered. (AR 462.) That next month, Plaintiff was "doing well" and attending physical therapy twice per week. (AR 465–66.)

Plaintiff attended a depression evaluation in October 2018. (AR 327–29.) He requested medication for motion sickness for an upcoming trip, as he was going on a flight with his wife. (AR 328–29.) In January 2019, Plaintiff presented for a follow up appointment for his evaluation of his right shoulder strain. (AR 487–90.) He reported that physical therapy is "helping decrease his shoulder pain and increase his range of motion." (AR 488.) He also reported that pain medication decreased his pain. (AR 488.)

In October 2019, Plaintiff complained of "chronic" left shoulder pain that is "aggravated by overhead type movement with hands." (AR 662.) Plaintiff presented for treatment for anxiety, depression, and substance abuse in December 2019. (AR 642–43.) He reported having started fishing as a hobby. (AR 642.) Plaintiff attended a telehealth appointment to review medications and discuss diabetes management in January 2020. (AR 637–39.) He reported plans to travel to Texas later that month. (AR 638.)

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff presented for an evaluation of left shoulder pain that is "progressively worsening" and "worse with overhead movements" in February 2021. (AR 578–80.) On examination, Plaintiff had no redness, swelling, warmth, or tenderness, limited abduction and internal rotation and positive Hawkin's sign. (AR 579.) X-ray imaging noted normal alignment but "calcific tendinitis." (AR 579–80.)

In March 2021, Plaintiff missed an appointment because he was watching his grandkids. (AR 570–71.) An MRI of Plaintiff's left shoulder performed that same month showed "glenohumeral capsulitis," and steroid injections were recommended. (AR 570.) Plaintiff could not participate in a telehealth appointment because he was picking up his grandchildren from school in May 2022. (AR 1303.)

Plaintiff reported in June 2022 that, later that month, he was having a "Celebration of Life" for his son, who had passed away. (AR 1294.) He further reported that he belonged to a church and spent time with fellow church members. (AR 1294.) That next month, Plaintiff reported "staying busy with his grandkids." (AR 1281.)

In September 2022, Plaintiff reported having traveled out of state to visit his son and family. (AR 1757.) Plaintiff underwent a comprehensive internal medicine evaluation that next month. (AR 1881–85.) He reported bilateral shoulder pain bilaterally, worse on the left compared to the right. (AR 1881.) He reported that he had surgery on the right shoulder in 2018 and it did "help some." (AR 1881.) Plaintiff also stated that he had injections in his left shoulder that helped for "4-6 months at a time." (AR 1881.) Regarding activities of daily living, he reported he cooks, cleans, drives, shops, performs his own activities of daily living without assistance, and walks some for exercise. (AR 1882.)

On examination, Plaintiff was able to easily get up out of his chair in the waiting room and walk at a normal speed back to the exam room without assistance. (AR 1882.) He sat comfortably and was easily able to get on and off the exam table. (AR 1882.) He was easily able to bend over at the waist and take off his shoes and socks and put them back on, "demonstrating good dexterity and good flexibility." (AR 1882.) His extremities were warm without cyanosis, clubbing, or edema. (AR 1883.) Plaintiff was able to walk several steps on his toes and heels. (AR 1883.) He had a

normal station, normal gait, and normal finger-to-nose testing. (AR 1883.) Romberg test showed "some positivity." (AR 1883.) Plaintiff had full range of motion in his cervical and lumbar regions. (AR 1883.) He had reduced range of motion in his shoulders. (AR 1884.) His straight leg raise testing was negative. (AR 1884.) Plaintiff's motor strength was normal (5/5) in the bilateral upper and lower extremities, including grip strength. (AR 1884.) He had normal bulk and tone; and no atrophy was noted. (AR 1884.) The sensory exam was grossly intact throughout the bilateral upper and lower extremities, and his deep tendon reflexes were 1+ in the bilateral upper and lower extremities. (AR 1884.) The examiner diagnosed Plaintiff with shoulder pain, noting his range of motion was "decreased" but his strength was "good." (AR 1884.)

Plaintiff reported being "active with his grandkids" in November 2022. (AR 2589.) He was also attending a weekly church support group. (AR 2589.) That next month, Plaintiff reported fishing with his grandson and visiting his mother every other weekend. (AR 2583.) He planned to resume woodworking and attend his church support group. (AR 2583.)

In October 2023, Plaintiff expressed a wish to proceed with surgery on his left shoulder to repair a rotator cuff tear. (AR 3874.) Later that month, he was evaluated by an orthopedic surgeon. (AR 3908–15.) On examination, Plaintiff was in no acute distress. (AR 3913.) His left shoulder demonstrated normal contour, and no atrophy. (AR 3913.) In active range of motion and strength testing, he had normal findings. (AR 3913.) Plaintiff's pulses were normal. (AR 3913.) In special testing, Hawkin's and Neer's tests were positive. (AR 3913.) The surgeon recommended medications, steroid injections, and therapy, and planned surgery for January 2024. (AR 3914–15.)

### 2. Plaintiff's Statement

In March 2019, Plaintiff completed a function report. (AR 230–237.) He noted he was independent in personal care activities and many activities of daily living, including preparing simple meals, and doing household chores such as vacuuming, laundry and loading/unloading the dishwasher. (AR 231–32.) Plaintiff also reported he was able to drive a car, shop in stores for groceries, manage his finances, and go to church twice per week. (AR 234.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on April 17, 2019, and

again on reconsideration on June 20, 2019. (AR 15, 111–15, 119–24, 863.) Following a hearing held March 25, 2021 (AR 32–73), an Administrative Law Judge (ALJ) issued a written decision on May 20, 2021, finding Plaintiff not disabled. (AR 19–35.) Plaintiff appealed the decision to the district court. (AR 960–62.) The parties thereafter voluntarily remanded the case for further proceedings. (AR 964–65.) On remand, the Appeals Council directed the assigned ALJ to conduct a *de novo* hearing, to take any further action needed to complete the record, and to issue a new written decision.[4] (AR 997–1000.)

At a second hearing held on September 18, 2023 (AR 898–938), Plaintiff appeared via teleconference with counsel and testified before an ALJ as to his alleged disabling conditions and work history. (AR 906–25.) A vocational expert (VE) also testified at the hearing. (AR 925–37.)

**1. Plaintiff's Testimony**

At the first hearing in 2021, Plaintiff testified that after his right shoulder arthroscopic surgery, he continued to experience problems with range of motion, particularly moving his arm out and back. (AR 45.) He also had problems with the left shoulder, with painful movement in all directions. (AR 46–47.) As a result, Plaintiff noted he could not lift more than 20 pounds (AR 47) and could no longer mow the lawn (AR 50). He testified that he did not take any pain medications, except for about a week after his shoulder surgery. (AR 50–51.) According to Plaintiff, his self-employment income in 2018 was from taking care of an elderly couple and involved lifting and transferring a person weighing 160 pounds. (AR 43.) He reported that he drove (AR 49), and watched his grandchildren (AR 60–62), including changing diapers for his two-year-old granddaughter. (AR 61–62.) Plaintiff testified that he traveled by airplane to Texas (AR 66), performed home exercises (AR 65), rewired the back of a TV (AR 62), and went fishing (AR 66).

At the second hearing in 2023, Plaintiff reiterated that he continues to have limitations related to his right dominant shoulder, including reaching overhead and taking care of some of his personal needs, such as reaching while showering. (AR 910.) Plaintiff testified that he also has pain in his left shoulder and may need surgery on it in the future. (AR 911.) He was treated with cortisone

[4] The Appeals Council also noted that Plaintiff filed a subsequent claim for DIB on June 26, 2022, which was deemed duplicative and consolidated for purposes of the new decision. (AR 998.)

injections and home exercises. (AR 911.) According to Plaintiff, he can lift around 20-25 pounds but needs help with heavier items. (AR 917.) Plaintiff testified he can only sit, stand and walk for short periods. (AR 916–17.)

**2. Vocational Expert's Testimony**

The VE testified that Plaintiff had past relevant work as: a commercial or institutional cleaner, Dictionary of Operational Titles ("DOT") code 381.687-014, with a heavy exertional level and a specific vocational preparation (SVP)[5] of 2; as a small engine mechanic, DOT code 625.281-034, SVP 6, medium exertional level (heavy as performed); and a composite job of tire repairer, DOT code 915.684-010, SVP 3, heavy exertional level, and front end mechanic, 620.281-038, SVP 6, medium exertional level. (AR 926–28.)

The ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience. (AR 928.) The VE was also to assume this person can perform work at the medium level of exertion (including the ability to lift and/or carry 25 pounds frequently and 50 pounds occasionally); can occasionally crawl and climb ladders, ropes or scaffolds; can occasionally reach overhead with the bilateral upper extremities; can understand, remember and carry out simple tasks that can be learned and mastered in up to 30 days' time or less; can maintain concentration, persistence, or pace throughout a normal workday or work week; can make simple work-related decisions; can plan and set goals; can adapt to routine workplace changes and travel; and can recognize and avoid ordinary workplace hazards. (AR 928–29.) The VE testified that such a person could not perform Plaintiff's past work but could perform other medium exertional jobs in the national economy such as hand packager, DOT code 920.587-018, with an SVP of 2; bagger, DOT code 920.687-014, with an SVP of 2; and coffee maker, DOT code 317.684-010, with an SVP of 2. (AR 929.) The VE further testified that those jobs would remain even when adding the limitations of frequently balance, stoop, kneel and crouch and never working at unprotected heights or operate heavy machinery. (AR 929.)

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

Plaintiff's attorney asked the VE whether the identified jobs are done while sitting. (AR 935–36.) The VE responded, "Occasionally, they'll be some sitting, but those jobs are done primarily on one's feet throughout the day with the exception of a normal break." (AR 936.) The VE further testified that if the hypothetical person was limited to "up to six hours" of standing, they could perform the medium jobs identified. (AR 936.)

**C. The ALJ's Decision**

In a decision dated May 31, 2024, the ALJ once again found that Plaintiff was not disabled, as defined by the Act. (AR 863–89.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 866–89.) The ALJ decided that Plaintiff met the insured status requirements of the Act through March 31, 2024, and he had not engaged in substantial gainful activity during the period between May 2, 2018, the alleged onset date, through the date last insured of March 31, 2024 (step one). (AR 866.) At step two, the ALJ found Plaintiff's following impairments to be severe through the date last insured: right shoulder degenerative joint disease, tendinosis, and partial thickness tear; left shoulder degenerative joint disease and partial rotator cuff tear; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and schizoaffective disorder. (AR 866–71.) The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") through the date last insured (step three). (AR 871–73.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[6] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ

---

[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

determined that Plaintiff had the RFC through the date last insured:

> to perform medium work, as defined in 20 CFR 404.1567(c), including the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently. He can occasionally crawl. He can occasionally climb ladders, ropes, and scaffolds. He can occasionally reach overhead with the bilateral upper extremities. He can understand, remember, and carry out simple tasks that can be learned and mastered in up to 30 days' time or less. At such levels, can maintain concentration, persistence, and pace throughout a normal workday and workweek, make simple work-related decisions, plan, and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards.

(AR 873–87.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 875.)

The ALJ determined that Plaintiff could not perform his past relevant work (step four) but, given his RFC, he could perform a significant number of jobs in the national economy (step five), including hand packager, bagger, and coffee maker. (AR 887–89.) The ALJ concluded Plaintiff was not disabled at any time from May 2, 2018, the alleged onset date, through March 31, 2024, the date last insured. (AR 889.)

Because Plaintiff did not file exceptions, and the Appeals Council did not assume jurisdiction on its own motion, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R § 404.984(d).

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154

(9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred at step five by relying on "contradictory" testimony by the VE and failed to articulate clear and convincing reasons for discounting his testimony regarding his subjective complaints. (Docs. 11, 14.) The Commissioner responds that substantial evidence supports the ALJ's step five findings and the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 13.) The Court finds no harmful error in the ALJ's decision and will affirm.

**A. The ALJ Did Not Err at Step Five by Relying on the VE's Testimony**

At step five of the sequential evaluation, the burden of proof shifts to the Commissioner to identify representative jobs that a claimant can perform given his age, education, work experience, and RFC. *See* 20 C.F.R. § 404.1520(g). The ALJ may rely on vocational expert testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101. For the testimony of a VE to be considered reliable, the questioning of the VE "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (citations omitted). If a claimant can perform other work, they are not disabled. 20 C.F.R. § 404.1520(g).

Here, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy. In so finding, the ALJ relied upon VE testimony at Plaintiff's second hearing, which addressed the limitations that the ALJ included in Plaintiff's RFC. (AR 873–74 (RFC); AR 928–29 (VE testimony).) At that hearing, the VE testified that a worker with Plaintiff's RFC could perform medium work occupations including hand packager, bagger, and coffee maker. (AR 929.) The VE also provided the numbers of such occupations in the national economy. (AR 929.) Because the "hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In disputing the ALJ's step five findings, Plaintiff asserts that the VE's testimony was "contradictory." (*See* Doc. 11 at 7; Doc. 14 at 6.) Specifically, he claims an inconsistency between his RFC for medium work, which he construes as limited to six hours of standing in an eight-hour workday, and the VE's testimony that a person limited to medium work could perform occupations performed "primarily on one's feet," which he construes as requiring standing for at least seven hours. (*Id.*) "Medium work," however, requires standing "for a total of approximately 6 hours of an 8-hour workday." *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) (quoting TITLES II & XVI: DETERMINING CAPABILITY TO DO OTHER WORK-THE MED.-VOCATIONAL RULES OF APPENDIX 2,

SSR 83-10, at *6 (S.S.A. 1983)). "***Approximately*** six hours a day does not mean a ***maximum*** of six hours a day[.]" *Bates v. Comm'r of Soc. Sec.*, No. 2:23-CV-2056 AC, 2025 WL 83304, at *5 (E.D. Cal. Jan. 13, 2025) (quoting *Mitzi D. v. Saul*, No. SA CV 18-01065-DFM, 2019 WL 8112507 at *2 (C.D. Cal. Dec. 13, 2019)) (emphasis in original). But even with such limitation, the VE nevertheless testified that a person who was limited to standing "up to six hours" could perform the medium jobs identified.[7] (AR 936.) Plaintiff has not shown that the VE's testimony was inconsistent, *i.e.*, that the identified occupations done "primarily on one's feet" required standing for more than six hours. *Cf.* SSR 83-10, at *5 (work performed "***primarily*** in a seated position" should "generally total ***approximately 6 hours of an 8-hour workday***") (emphasis added). The Court therefore concludes that the testimony of the VE constituted substantial evidence in support of the ALJ's determination that Plaintiff was not disabled within the meaning of the Act. *See Ford*, 950 F.3d at 1159–60 ("[W]here the [vocational] expert is qualified and presents cogent testimony that does not conflict with other evidence in the record, 'the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold.'") (quoting *Biestek*, 587 U.S. at 105).

## B. The ALJ Properly Found Plaintiff Less Than Fully Credible

### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear

---

[7] It is for this reason that Plaintiff's reliance on *Conley v. O'Malley*, 96 F.4th 1275 (9th Cir. 2024) (Doc. 11 at 6) is misplaced. In *Conley*, the Ninth Circuit found inconsistent the VE's testimony that the plaintiff could perform medium work yet could not perform occupations that included a six-hour standing limitation. 96 F.4th at 1279. Here, no such inconsistency exists: the VE testified that a person who was limited to standing "up to six hours" could perform the medium jobs identified. (AR 936.)

and convincing reasons" for the rejection.[8] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 875.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff argues, citing Ninth Circuit authority, that the ALJ "failed to adequately tie [] evidence to [Plaintiff's] testimony she found not credible." (Doc. 11 at 10 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).) However, the Ninth Circuit has held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require

[8] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 13 at 6 n.3.)

ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Moreover, unlike in *Brown-Hunter*, the ALJ here did not merely summarize the medical evidence. *See* 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence). Rather, the ALJ detailed Plaintiff's physical allegations of shoulder problems, inability to lift "more than 20 pounds," and ability to sit, stand, and walk for only "very short periods" (AR 874) and then contrasted that testimony with opposing evidence from the medical record showing performance of certain daily activities; improvement with conservative treatment; and mild objective findings (AR 875–876, 877–79).[9] The identification of specific allegations and how the evidence undermines those allegations—described in further detail below—permits the undersigned to review the ALJ's reasoning. Plaintiff's argument is therefore unavailing. *See, e.g., Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's] symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire record")); *Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding no error where the ALJ summarized the plaintiff's "relevant testimony concerning her key asserted limitations," "stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record,'" and then "explained the specific reasons upon which that conclusion was based."); *Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."); *compare Holcomb v. Saul*, 832 Fed. App'x. 505, 506 (9th Cir. Dec. 28, 2020) (finding

[9] Plaintiff does not challenge the ALJ's treatment of his mental impairment testimony.

no link where "the ALJ never mentioned [the claimant's] symptom testimony while discussing the relevant medical evidence"). *See also Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings followed a conventional organization for the ALJ's decision writing which is sufficiently clear for judicial review); *Razaqi v. Kijakazi*, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing.").

Here, the Court finds that the ALJ identified at least three valid reasons for discrediting Plaintiff's physical symptom testimony:

a. Reported daily activities

First, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff "engaged in a number of activities that are not consistent with the severity of the reported symptoms and undercut a finding of total disability." (AR 875.) A claimant's level of activity may support an ALJ's determination to give less weight to their subjective statements. When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). In addition, the Ninth Circuit determined that a claimant's activities may be used to support an adverse credibility determination where the capabilities contradict the severity of the symptoms reported. *See, e.g., Valentine*, 574 F.3d at 693; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Thus, the Ninth Circuit determined a claimant's level of activity can form the basis for an ALJ to discount subjective statements where: (1) the activities contradict a claimant's testimony or (2) the level of activity "meet[s] the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

As identified by the ALJ (AR 875, 879), Plaintiff reported during the relevant period that he

prepared simple meals, did household chores (such as vacuuming, laundry and loading/unloading the dishwasher), drove, shopped in stores, performed his own activities of daily living without assistance, walked for exercise, went to church twice per week, cared for his young grandchildren (including changing diapers and picking them up from school), cared for an elderly couple (including lifting and transferring a person weighing 160 pounds), traveled by airplane out of state to visit friends and family, performed home exercises, socialized with others (including visiting with his mother and attending church group meetings), and went fishing. (AR 43, 49, 60–62, 65, 66, 231–32, 234, 638, 570–71, 1294, 1281, 1303, 1335, 1757, 1882, 2589, 2583.) Plaintiff does not dispute he performed these activities. Instead, he asserts that "there is no indication that these activities equate to the ability to engage in medium work on a full-time basis." (Doc. 11 at 10.) But the Ninth Circuit has indicated that there are "***two*** grounds for using daily activities to form the basis of an adverse credibility determination." *Orn*, 495 F.3d at 639 (emphasis added). "When an ALJ finds the claimant's level of activities contradicts their testimony, the ALJ is not required also to find that the level of activity is transferable to work." *Valdez v. Bisignano*, No. 1:24-CV-0026 JLT EPG, 2025 WL 2330229, at *6 (E.D. Cal. Aug. 13, 2025). "Rather, these are separate considerations." *Id. id.* (citing *Orn,* 495 F3d at 639); *see also Stubbs-Danielson*, 539 F.3d at 1175 ("where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment); *Valentine*, 574 F.3d at 693 (finding the ALJ identified "a clear and convincing reason to reject [the claimant's] subjective testimony" where the level of activity "contradicted [his] contentions about how debilitating his fatigue was").

Here, the ALJ reasonably concluded, based on substantial evidence in the record, that Plaintiff's activities contradicted his allegations of an inability to sit, stand, or walk for more than minimal periods, or lift more than a few pounds, because they demonstrated "repetitive motion," "an ability to sit for extended periods of time," "use of the upper extremities," and "good use of the arms" (AR 875, 879). *See, e.g., Kaufmann*, 32 F.4th at 851–52 ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and

vacationing.”). Contrary to Plaintiff’s assertion, the ALJ was not required also to find that his activities equated with the performance of full-time medium work. *See Valdez*, 2025 WL 2330229, at *6 (“As the magistrate judge found, ‘the ALJ made a reasonable determination that Plaintiff’s daily activities, as reported in her physical therapy and other post-surgical treatment records, were inconsistent with her hearing testimony.’ Plaintiff’s objection that the ALJ was also required to find her activities rose to the level of transferable to work is unsupported by established law.”) (internal citations omitted).

b. Treatment history

Next, the ALJ found that Plaintiff’s “medical treatment is inconsistent with his statements concerning the intensity, persistence, and limiting effects of his symptoms.” (AR 875.) Specifically, the ALJ observed that Plaintiff’s treatment for his “allegedly disabling shoulder” impairments has been “essentially routine or conservative in nature” with “good response” and there was a “gap between the initial reports of left shoulder pain and further evaluation.” (AR 875–76, 879, 886.)

“[E]vidence of ‘conservative treatment’ is sufficient to discount a claimant’s testimony regarding severity of an impairment.” *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). An ALJ also may find a claimant less credible when their symptoms can be controlled by treatment and/or medication. *See* 20 C.F.R. § 404.1529(c)(3)(iv)–(v); *Morgan*, 169 F.3d at 599 (the ALJ’s adverse credibility determination properly accounted for physician’s report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant’s impairments were responsive to treatment); *see also Warre v. Comm’r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (“Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits.”).

There is substantial evidence in the record on which the ALJ relied that Plaintiff’s course of treatment for his shoulder impairments was routine and conservative overall, even though he underwent surgery on his right shoulder following his workplace injury. (*See* AR 875–76, 879.) For example, Plaintiff’s post-surgical right shoulder pain was treated primarily with physical therapy and pain medication. (*See* AR (AR 462, 465–66, 488). Plaintiff’s left shoulder pain was similarly

treated, with physical therapy and occasional steroid injections. (*See* AR 570, 911, 1881, 3914–15.) There is also substantial evidence that these treatment modalities improved Plaintiff's condition (*see* AR 462 ("feeling well" post-surgery); AR 465–66 ("doing well" with physical therapy); AR 488 (physical therapy and pain medication "helping decrease his shoulder pain and increase his range of motion"); AR 1881 (surgery "help[ed] some" and injections helped for "4-6 months at a time")). *See, e.g., Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (upholding the ALJ's rejection of the claimant's testimony based on their "generally conservative treatment plan" and "overall improvement," even though the claimant had a surgery following their injury).

Plaintiff again does not dispute this evidence. Instead, he criticizes the ALJ for failing to identify "other aggressive treatment options" that would be warranted. (Doc. 11 at 11; Doc. 14 at 4.) But the ALJ did discuss more aggressive treatment options: surgery. (*See* AR 878 (noting that a "planned left shoulder arthroscopy, with subacromial decompression, possible rotator cuff repair versus debridement, and possible application regenerations" was scheduled in January 2024, yet it is "unclear" whether Plaintiff had this procedure) (citing AR 3908–15).)[10] To the extent Plaintiff contends that the uncontroverted evidence of "good response" to treatment does not undermine his testimony (Doc. 11 at 11), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 604). Moreover, Plaintiff does not address, much less explain, his lack of treatment for left shoulder pain between October 2019 and February 2021 (AR 877, 886). *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("An ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints.").

c. <u>Objective medical evidence</u>

Lastly, the ALJ found that "clinical findings fail to provide a compelling basis for

---

[10] The scheduling surgeon recommended "conservative treatment," including "NSAIDs, steroid injections, and therapy," prior to surgery (AR 3914–15). *See Loniza v. King*, No. CV 23-00352 MWJS-RT, 2025 WL 435943, at *6 (D. Haw. Feb. 7, 2025) ("[I]f the administrative record contains statements from physicians describing a course of treatment as conservative, an ALJ would act rationally in inferring that the physician was aware of more aggressive treatment options."); *see also Brock v. Astrue*, No. C 08-4829 CRB, 2010 WL 1222754, at *5 (N.D. Cal. Mar. 24, 2010) (rejecting the plaintiff's argument that their treatment was not conservative where their "treating physicians themselves described their treatment of their injuries as "conservative.").

[Plaintiff's] statements regarding limitations in the use of his upper extremities." (AR 879.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680, 681; *see Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 600. *See also Smartt*, 53 F.4th at 498 (When objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original) (collecting cases). Here, the ALJ observed that Plaintiff's more recent medical records from October 2023 showed normal range of motion in his shoulders and normal strength, with no atrophy. (*See* AR 879 (citing AR 3913).) The ALJ also cited the consultative examination from a year prior, which similarly showed normal findings. (*See* AR 879 (citing AR 1881–85).)

This evidence, which is supported by the record, is once again undisputed. Instead, Plaintiff asserts that the ALJ "failed to adequately explain why the findings from the physical examinations, xrays [*sic*] and MRI results as summarized in the decision do not support [Plaintiff's] testimony." (Doc. 11 at 11–12.) The Court disagrees. The ALJ expressly noted that the normal examination findings demonstrate Plaintiff "still has functional use of his upper extremities" and therefore do not support his allegations of upper extremity limitations (AR 879). *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations). *See also Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[W]e are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

In sum, the Court finds that the ALJ provided at least three clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of his physical impairments.[11]

---

[11] Even if the ALJ had erred in evaluating his subjective symptom testimony, however, Plaintiff has not shown such error would be harmful. Despite bearing the burden of proving his disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), Plaintiff does not specify what additional functional physical limitations resulting from his alleged symptoms were not accounted for in the ALJ's RFC assessment or otherwise identify how such error would not be inconsequential to the ultimate nondisability determination. *See McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011)

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **July 24, 2026** /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE

---

("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). *Cf. Ruth F., v. Comm'r of Soc. Sec.,* No. C20-5603-MAT, 2021 WL 3772067, at *5 (W.D. Wash. Aug. 25, 2021) ("[A]ny error in the ALJ's evaluation of Plaintiff's subjective testimony would be harmless because the ALJ accounted for Plaintiff's alleged exertional limitations in the RFC.").